AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)   ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
for the
Central District of California



LODGED
CLERK, U.S. DISTRICT COURT
4/10/25
CENTRAL DISTRICT OF CALIFORNIA
BY: MRV   DEPUTY

FILED
CLERK, U.S. DISTRICT COURT
4/10/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: clee   DEPUTY

United States of America,

v.

CHAOYAN ZHANG,

Defendant.

Case No. 2:25-mj-02138-DUTY

## CRIMINAL COMPLAINT

I, Natasha Yasin, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date of April 4, 2025, in the county of Los Angeles in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2320 | Trafficking in Counterfeit Goods or Services |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
Complainant's signature

Natasha Yasin, Special Agent
Printed name and title

Sworn to before me and signed in my presence.

Date: April 10, 2025

Judge's signature

City and state: Los Angeles, California

Hon. Steve Kim, U.S. Magistrate Judge
Printed name and title

AUSA: Joshua J. Lee – (213) 393-5645

**AFFIDAVIT**

I, Natasha Yasin, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and arrest warrant for Chaoyan ZHANG ("ZHANG") for a violation of 18 U.S.C. § 2320 (trafficking in counterfeit goods or services).

2. The facts set forth in this affidavit are based upon my personal observations; my training and experience; and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and part only.

## II. BACKGROUND OF SPECIAL AGENT

3. I am a Special Agent ("SA") with the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI") and have been so employed since June 2019. I am currently assigned to the HSI Global Trade Investigations Trade Fraud Group, where I investigate criminal violations relating to trade fraud, evasion of customs duties, intellectual property rights violations, the trafficking and smuggling of substandard and

dangerous counterfeit products into the United States, and importations contrary to law.  Through my training and experience, I have acquired knowledge of HSI's criminal investigative authority and various investigative techniques.  I have conducted criminal investigations and assisted other agents and officers in numerous investigations involving the aforementioned offenses.  I have participated in the execution of search warrants and arrest warrants, many of which involved smuggling goods into the United States.  I am a graduate of the HSI Special Agent Training Program, at the Federal Law Enforcement Training Center in Glynco, Georgia.  There, I received 25 weeks of training in the detection and investigation of federal criminal violations, including fraud and intellectual property rights violations.  In addition, I have a bachelor's degree in criminal justice from the California State University of Fullerton.

     4.   Since joining HSI, I have investigated a variety of criminal offenses, including trade fraud, intellectual property rights violations, and drug trafficking.  During these investigations, I have used various investigative techniques, including interviews, court-authorized searches of physical locations and the electronic devices and data retrieved from them, examining physical evidence, conducting surveillance, and reviewing financial, telephone, and other third-party records.  I have also spoken to other personnel with the Department of Homeland Security with experience in auditing importations and determining the value of importations.  As a result of my

experience and my conversations with other law enforcement personnel, I am familiar with the methods used by individuals to commit trade fraud, wire fraud, and other related offenses. I am also familiar with the methods used by individuals to conceal their activities and avoid detection, and how evidence of those offenses is stored or saved.

### III. BACKGROUND ON TRADEMARKS AT ISSUE

5. On April 5, 2025, I queried the United States Patent & Trademark Office ("USPTO") Internet database and the United States Customs and Border Protection ("CBP") Intellectual Property Rights Search ("IPRS") website[1] and learned the following information regarding the Alexander Wang's registered trademarks:

   a. The USPTO has registered the following wordmark relating to Alexander Wang's products:

## ALEXANDER WANG

It is an active wordmark registered as Customs Recordation Number[2] TMK 24-03078 with registration number[3] 3801258.

---

[1] The IPRS website is a database containing public versions of CBP intellectual property rights recordation and can be accessed on https://iprs.cbp.gov/s/.

[2] A customs recordation number is a unique identification number assigned by CBP to a registered trademark or copyright, enabling CBP and HSI to enforce intellectual property rights for those numbers.

[3] A trademark registration number is a unique, seven-digit identifier assigned by USPTO to a trademark after it has been officially registered, signifying that the mark has been granted legal protection.

6. On April 5, 2025, I queried the USPTO Internet database and the CBP IPRS website and learned the following information regarding Burberry Limited's ("Burberry") registered trademarks:

    a. The USPTO has registered the following wordmark relating to Burberry's products:

# BURBERRY

It is an active trademark registered as Customs Recordation Number TMK 21-00930 with registration number 3879249.

    b. The USPTO has also registered the following wordmark relating to Burberry Limited company United Kingdom and Burberry's products:

## BURBERRY LONDON, ENGLAND

It is an active trademark registered as Customs Recordation Number TMK 22-00384 with registration number 5116946.

    c. The USPTO also registered the following trademark relating to Burberry's products:



It is an active trademark registered as Customs Recordation Number TMK 05-00695 with registration number 1241222.

7.  On April 5, 2025, I queried the USPTO Internet database and the CBP IPRS website and learned the following information regarding Chanel, Inc.'s ("Chanel") registered trademarks:

   a.   The USPTO has registered the following wordmark relating to Chanel's products:

CHANEL

It is an active trademark registered as Customs Recordation Number TMK 23-02222 with registration number 7189827 (for footwear, headwear, and other accessories).

   b.   The USPTO has registered the following trademarks relating to Chanel and Chanel's products:



It is an active trademark registered as Customs Recordation Number TMK 23-0211 and registration number 7196443 (for footwear, headwear, and other accessories); TMK 02-00743 with registration number 1734822 (for handbags, wallet accessories, etc).

8. On April 5, 2025, I queried the USPTO Internet database and the CBP IPRS website and learned the following information regarding Christian Dior Couture, S.A.'s (France) ("Christian Dior") registered trademarks:

    a. The USPTO has registered the following wordmark relating to Christian Dior's products:

**CHRISTIAN DIOR**

It is an active trademark registered as Customs Recordation Number TMK 01-00453 with registration number 523754.

9. On April 5, 2025, I queried the USPTO Internet database and the CBP IPRS website and learned the following information regarding Fendi S.r.l. Limited Liability Company's ("Fendi") registered trademarks:

    a. The USPTO has registered the following wordmark relating to Fendi's products:

**FENDI**

It is an active trademark registered as Customs Recordation Number TMK 22-00407 with registration number 4409049.

    b. The USPTO has registered the following wordmark relating to Fendi's products:



It is an active trademark registered as Customs Recordation Number TMK 22-00408 with registration number 4362861.

10. On April 5, 2025, I queried the USPTO Internet database and the CBP IPRS website and learned the following information regarding Gucci America, Inc.'s ("Gucci") registered trademarks:

    a. The USPTO has registered the following wordmark relating to Gucci's products:

# GUCCI

It is an active trademark registered as Customs Recordation Number TMK 04-00246 with registration number 1168477.

    b. The USPTO has registered the following wordmark relating to Gucci's products:



It is an active trademark registered as Customs Recordation Number TMK 12-01159 with registration number 3470140.

    c. The USPTO has registered the following trademark relating to Gucci's products:



It is an active trademark registered as Customs Recordation Number TMK 19-00430 with registration number 4379039.

11. Also on April 5, 2025, I queried the USPTO Internet database and the CBP IPRS website and learned the following information regarding Louis Vuitton France, Louis Vuitton Malletier, or Louis Vuitton's ("Louis Vuitton") registered trademarks:

    a. The USPTO has registered the following trademarks relating to LV:

 

These are active trademarks registered as Customs Recordation Number TMK 22-00973 with registration number 4 192541.

12. USPTO has also registered the following trademark relating to LV:



It is an active trademark registered as Customs Recordation Number TMK 10-00857 with registration number 2361695.

13. Also, USPTO has registered the following trademark relating to LV:

**LOUIS VUITTON**

It is an active trademark registered as Customs Recordation Number TMK 20-01031 with registration number 4530921.

## IV. SUMMARY OF PROBABLE CAUSE

14. In February 2025, HSI received information from CBP that several companies based in Los Angeles were importing and distributing counterfeit luxury goods. The companies of interest were L & J Fashion Square Inc.[4] and Mitchelle Inc. On April 4, 2025, HSI conducted a controlled buy using an undercover agent ("UCA") to make purchases of suspected counterfeit items in the San Gabriel Valley, where Mitchelle Inc. was located. The UCA bought from ZHANG several pieces of luxury brand items that was determined to be counterfeit for approximately $490. Indeed, ZHANG admitted, in the undercover footage, that the items she was selling were "copies."

## V. STATEMENT OF PROBABLE CAUSE

15. In February 2025, HSI received information from CBP that several companies based in Los Angeles were importing and distributing counterfeit luxury goods. One of the companies of

---

[4] HSI is seeking a separate complaint and arrest warrant for L & J Fashion Square Inc.

interest was Mitchelle Inc., located at 1635 South San Gabriel Boulevard in San Gabriel.

16. On February 19, 2025, and March 14, 2025, HSI conducted surveillance and located the store believed to be Mitchelle Inc. The store appeared to be white in color and did not have markings on the exterior of the store. Mitchelle Inc. was physically located inside the San Gabriel Superstore or "S.G. Superstore" on 1635 South San Gabriel Blvd in San Gabriel.

17. During both occasions, I saw an Asian female, later identified to be ZHANG, behind the cash register towards the back of the store. I walked through the store and saw numerous articles of clothing, accessories, jewelry, and footwear bearing the names of several luxury brands, which were suspected to be counterfeit Gucci, Valentino, Chanel, Cristian Dior, Louis Vuitton, and others. When I asked if the store was called "Mitchelle," ZHANG said "yes." I also saw numerous DHL boxes beneath the clothing racks inside Mitchelle Inc., and the boxes listed Hong Kong, China, as the sender location.

18. On April 4, 2025, HSI conducted a controlled buy from ZHANG. The UCA spoke with ZHANG and made a purchase of approximately 10 pieces of clothing and accessory items bearing the Christian Dior, Burberry, Chanel, and Louis Vuitton trademarks, for approximately $490.

19. The UCA was wearing a covert audio/video recording device. The device captured the UCA's conversations with ZHANG. Based on my review of the footage, as well as my conversations with the UCA, I learned the following in summary:

      a.    The UCA asked ZHANG if she had any items like the Christian Dior brand, how much the items were priced for, and if the items were copies, to which ZHANG said, "Yeah copy."  When the UCA asked if a Chanel piece that ZHANG was selling was real, ZHANG said "Copy."  When the UCA asked how much a Chanel piece would normally cost, ZHANG stated "1,000."

    20.    Following the interaction and purchase of the above, the UCA gave the merchandise to a nearby team of HSI agents.  Personnel from a private firm called Investigative Consultants ("IC")[5] was on scene with HSI when the UCA conducted the controlled buy.  The IC representative confirmed that the items the UCA purchased were counterfeit and concluded that Mitchelle Inc. had numerous counterfeit items within its possession.

    21.    Detailed photos of the merchandise and the affixed labels were sent to a CBP Import Specialist of the Apparel, Footwear, and Textiles Center to assist with determining whether the purchased goods were authentic.  The Import Specialist noted numerous inconsistencies with the purchased goods.

      a.    The Chanel hat had "CC" stylized, and the wordmark "Chanel" was cut off on the bill and panel of the hat.  The stitching quality of the label was off center and of overall poor quality.  The Chanel (made in Italy) care tag and label

---

[5] IC is a private entity who routinely works with HSI and state and local law enforcement authorities in counterfeit goods investigations.  IC has been trained by the respective luxury brands and represents Louis Vuitton, Fendi, Christian Dior, Burberry, Chanel, Gucci, and Alexander Wang (in addition to other large name brands in the fashion industry).

stitching quality was inferior and off centered, thus inconsistent with an authentic Chanel piece.

  b. The Chanel counterfeit footwear piece had two different brand names: "CC," and "Only Color Fashion Shoes," which is not recorded with CBP and not consistent with the Chanel trademark.

  c. The Chanel wallet piece had the "CC," monogram hardware and stitching that did not appear to be of superior quality as is found in authentic Chanel wallet accessory items.

  d. The Burberry hat piece had fabric overlapping and the care tag label did not appear authentic to the real brand. Thus, it was inconsistent with an authentic Burberry piece.

  e. The Christian Dior grey sweater piece had the label in the neckline, which did not appear to be centered, and the stitching was frayed. Thus, it was inconsistent with an authentic Christian Dior piece.

  f. The Louis Vuitton black shirt piece had applique/patch stitching, which appeared to be of inferior quality and not permanently affixed, and inconsistent with an authentic Louis Vuitton piece.

  g. Based on their training and experience, the CBP Import Specialist concluded that the purported Louis Vuitton, Christian Dior, Burberry, and Chanel merchandises differed from legitimate brands and were counterfeit.

 22. On April 9, 2025, at approximately 1:15 p.m., HSI agents conducted surveillance at S.G. Superstore located on 1635 South San Gabriel Blvd and saw ZHANG arrive and set up her store

at the same location agents conducted the previous purchase of counterfeit merchandise. HSI then arrested ZHANG. ZHANG provided a copy of her California State Driver's License, which contained a photograph of ZHANG, listed her date of birth, with an address in El Monte, California 91731. ZHANG stated she is a Chinese national and currently resides at the above address. On this same day, I conducted record inquiries in the LexisNexis database and law enforcement databases that confirmed the above information provided for Chaoyan ZHANG. ZHANG also agreed to forfeit/abandon the remaining pieces of clothing and accessories in the store. HSI personnel took the items and assessed the preliminary approximate value of the clothing, jewelry, and accessories (had they been legitimate) as approximately $1,000,000.00 MSRP.

///

///

///

## VI. CONCLUSION

23. Based on my knowledge of the case, my communications with other agents investigating this case, my communications with IC personnel, and review of the footage of the controlled buy purchase, I believe ZHANG knowingly sold counterfeit merchandise to unsuspecting customers, in violation of 18 U.S.C. § 2320 (trafficking in counterfeit goods or services).

       /s/
NATASHA YASIN, Special Agent
Federal Bureau of
Investigation

Subscribed to and sworn before me this <u>10th</u> day of April, 2025.

_____
HONORABLE STEVE KIM
UNITED STATES MAGISTRATE JUDGE